Final case for the morning, HoelzleversesVensureEmployeeServicesAppellateNumbers22-1372 and 22-1455. Good morning. May it please the Court, my name is Corey Barnwell. I represent the appellants, Venture Employee Services, Inc., who I'll refer to as Venture, and the Cross Appellees, Employee Max, Acquisition LLC, as well, in addition to Venture, who I'll refer to as Employee Max. Would you like to reserve any time for rebuttal? It's short. I don't think it will take more than two minutes. Granted. Just to give the Court a brief factual background on the disposition. Just a little familiar with the facts. Just a dumb question on, you're representing Venture, but the party here is Employee Max also, right? Correct. That was the party that supposedly, the claim is that it assumed a contract. That's correct. So you're representing them as well? Correct. Okay. So if you're familiar with the facts, then the sole issues before this Court today are, one, whether Employee Max is liable to Mr. Hosel to honor the terms of his letter offer with his former employer, Employer Services Online, under a theory of successor liability. And I'll refer to Employer Services Online as ESO for convenience. And two, whether Venture bears liability and that the trial court erred by ruling there was insufficient evidence to pierce the corporate veil of Employee Max because Venture was the parent company of Employee Max. Wait a minute. Isn't the key issue here that whether Employee Max impliedly assumed a contract? Through successor liability, yes, sir. Through successor liability or impliedly on its own decided, despite the fact the agreement said it wasn't assuming the contract, it ultimately did by its actions? That was the lower court's determination. But is that necessarily successor liability? That's the way the lower court categorized it, yes. But how would you categorize it? I would say that they did not assume the contract. No, no. If a contract is entered with Employee Max as the acquirer and the contract says that we are not assuming various employee contracts, including this one, and then this person comes to work for the company and works and later claims that impliedly Employee Max assumed that contract, even though it wasn't in the asset purchase agreement. Is that really between Employee Max and Mr. Hosel? Yes. Sounds like you're talking about some type of successor liability, which I don't quite understand, unless the entities are merged together, which is the second argument. Let me just ask this question, maybe this will clarify. When you use successor liability, you mean successor to ESO? Correct. I see. All right. Correct. And so is there any evidence that either Venture or Employee Max conveyed to Hosel terms for employment that were different than the offer letter he operated under when he worked for ESO? Yes, Your Honor. What is the evidence? Where in the record is that that conveyed to him, these are the terms of your employment? I mean, there was no written employment agreement, but by their actions, the only thing they carried over from the offer letter with ESO to Employee Max was his base salary, not the commission. His position and his title and his job duties and his salary. So the only things that didn't carry over were the commission, correct? No, he did not retain a board seat. He voluntarily ceded that before the merger? Correct. Okay. With the intent, as the record reflects, to regain that seat afterwards, which did not happen. That's not a term of his employment. His case is about breach of contract for the terms of his employment. So what changed? He didn't get his commission, and what's the other thing that didn't happen? Or is that it? That's it. So you would want him to believe that by simply not paying him commission, he was operating on completely different terms despite his title, salary, day-to-day duties. His title didn't, in fact, change from vice president of operations, I believe, with ESO to president of Employee Max. So you're claiming that there are facts, I assume, that are material that should preclude the court granting judgment here. Is that correct? That's exactly what I'm saying. What facts in the record put in dispute the asset buyer's intent to assume liability? Initially, I would say the fact that they weren't paid. Mr. Hosel continued to work for over a year for Employee Max and never mentioned commission. Nothing in the record reflects him. Okay. You're relying on the silence. Is there any fact in the record that puts this in dispute? Is there anywhere in the record where your employees reject that they say, no, we didn't say we'd assume the contract or anything like that? Yes. The deposition of Mr. Campos, who is the CEO of both Venture and Employee Max, was clear that it was base salary, $90,000. Okay. But does he say he said anything at the time? At the time of the acquisition? Yes, or in that year afterwards, that no, we're not assuming or anything like that? Aside from the fact that it was an excluded liability under the terms of the asset purchase agreement. Okay. All you've got in terms of affirmative things is the agreement itself said that, that this is excluded. Correct. Okay. Correct. So in forming this decision, the trial court found Employee Max liable for the offer letter of ESO under the successor liability relying on Bird Hill Farms, Inc. versus U.S. Cargo and Courier Services. That's 845A2D900, Pennsylvania Superior Court, 2004. And the Bird Hill Farms is a balancing test of three factors, and the presence or absence of any one factor is not dispositive. The three factors are whether the successor's conduct indicated its intention to assume the obligation, two, whether the creditor relied on the conduct and the effect of any reliance, and three, whether the successor's representatives admitted liability. And it's really only the first factor that the parties disagree about, correct? I think the first two. The court found the third weighed in favor of – I'm asking whether the parties in front of us. I know what the district court did. Sure. I'm asking if you folks are still disputing, because my understanding of your briefs is no one was disputing that plaintiff. Plaintiff said he was relying on whatever he thought existed, and there's no dispute that you're taking the position, the defendants are taking the position that they didn't assume it. So the question is really the intent to assume the facts that demonstrate the intent. Am I correct? No. I think the first two are in dispute as well. I'll get to that. Does it dispute as to whether – you dispute whether he relied on – I do. I do. I think if he was – What do you have in the record to demonstrate that he did not rely on it and that you dispute whether he relied on it? That the record is devoid of any request for commissions or any payment of commissions for the entirety of his employment with Employee Max. If he was reliant upon it shortly within that period and that time frame, he would have requested it as much. In this case, it's distinguishable from Bird Hill Farms, which was a purchaser who assumed – who was found to have assumed a lease under successor liability theory. But in that case, it was the lease in question. They abided by every single term of the lease from paying – for 11 months, paying rent, utilities in its own name, and every other action that was required upon them under the terms of the lease. We know Bird Hill's facts. I'd like to just go back to the facts here. Okay. Is there anything in the record that would tell us when the commissions had been – how frequently the commissions had been paid when ESO was the entity employing Mr. Hosel? No. So how can we infer – other than the fact he didn't ask, we don't have anything in the record then to suggest he should have asked sooner because we don't know whether or not he was paid yearly, correct? That is true, Your Honor. I will concede to that. So that's kind of the position as to the offer letter. It was clear that they didn't indicate to assume the obligation because they didn't pay any commissions, not granted. I know – but it's – the record is devoid of any commission structure payments for any other employees that receive commissions. So I won't dive deep into that. Can I ask you about the alter ego issue? Yes, sure. Venture played a role in Mr. Hosel's termination, according to the record. Two high-level officials made the decision he should be terminated. And then his final check was issued out of a Venture account. Does that role that they played in his termination, the fact that Venture issued that final check, and the absence of any evidence that ESO employees had any kind of role in the operation of Employee Max's finances, et cetera, demonstrate that there was no corporate separateness and there was an intermixing of Venture and Employee Max? In that regard, Judge, I would point you towards McCrary v. Scioli, 336 Pennsylvania Superior Court 455. It's a 1984 case, and it was actually – let's see, it says, it is a well-settled rule in Pennsylvania that a court will only disregard the existence of separate corporate entities in order to prevent fraud, illegality, or injustice, or when the recognition of the corporate entity will defeat public policy or shield someone from liability of a crime. And then here's the important part. Ordinarily, separate corporations retain their distinct identities, notwithstanding the fact that they may have common stockholders, directors, and officers. But that's not – that wasn't the question here. The question is, it looks like Venture made at least one payment to Mr. Hosel, and they may have so controlled things that one could make an argument that there would be the ability to pierce the corporate veil or at least get the facts – more facts in order to determine it. For example, did Venture make other payments to Mr. Hosel during his period of employment? None of the record would indicate, no. So, I mean, it's – what you're looking at is two ends of the telescope, if you will. From the company end, did they ignore corporate boundaries, such as mixing funds, sharing employees, et cetera, making decisions for the subsidiary? And then from the creditor end, the other end, they can't tell one from the other. That's – let me – it's, in effect, a two-part look. And is there any reason here, from your perspective, that the creditors shouldn't consider Venture completely separate from Employee Max? There is. And I would point to Lumax Industries versus Altman and what it takes to pierce the corporate veil. I'm talking about facts. I don't want – I don't need the case. There's a presumption in your favor, and the other side has a pretty high hill to climb in order to overcome that presumption. But what are the facts that support your position? There was no undercapitalization proven by Mr. Hosel, no failure to adhere to corporate formalities between Venture and Employee Max. I've never been quite sure why undercapitalization is a significant factor, but – Well, I think it's so that Employee Max, if it's undercapitalized, could then – Yeah, if it's undercapitalized, maybe Venture has to pay the final bill as opposed to Employee Max. That's the argument they would make. And there was not a substantial intermingling of corporate and personal affairs, aside from every entity that Venture purchased through an acquisition vehicle such as Employee Max. The officers would just simply move and maintain officerships for those entities as well. So are you saying that the gentlemen who made the decision to terminate Mr. Hosel were officers of Employee Max? Because you just told us that Mr. Hosel was the president. Correct. So what officer role over Employee Max did the two gentlemen who made the employment decision hold? Because they were identified in their deposition as C-suite employees of Venture, not Employee Max. Sure, but they – as I said, whatever respective officerships they had at the Venture level then go to the acquisition vehicle company. What does that mean? It means in this case, Employee Max acquisition, the chief executive officer of Venture is the chief executive officer of Employee Max. Is there something in the record that would tell us that? Will we see that in the APA? It would not be in the APA. I believe it's in the testimony of Alex Campos, the chief executive officer. And so that's why – and is that the explanation of why they played a role in Mr. Hosel's termination? Yes, that's the allegation. Usually a president is relieved of duty by a board. Is that what happened here? This is a manager – excuse me, member-managed LLC. LLC, okay. With no board. So the managing member obviously Venture Employer Services. I got it. All right. We'll have you back on rebuttal. Thank you. You bet. Good morning, Your Honors. I may please the Court. My name is Lindsay Hosel, and I represent the appellee and cross-appellant Brian Hosel. Any relation? Yes, Your Honor. I am his wife. This is – as you noted, this is an employment case. It's about a salesperson, Brian, who is operating under the terms of an offer letter. Salespeople are typically paid commissions on top of some sort of salary, and that is exactly what the offer letter here requires. Your adversary made the point that no commissions were paid during the course of his employment, Mr. Hosel's employment, by Employee Max. But he also represents there was never an inquiry about where are my commissions. Shouldn't we take that fact to show that he didn't have an expectation of those commissions because he wasn't asking where they were? Your Honor, I don't have a specific site to the record at hand regarding Brian specifically asking for commissions. However, there was much discussion regarding Brian and Venture discussing a new contract that would come about, and most certainly that contract would have included commissions. That contract never came to play, and that's kind of why this case is very similar to the Bird Hill case because just similarly to that case, the company that purchased the prior tenant was in negotiations for 11 months on the terms of a new lease for the property, and at the end of the day, they never came to terms on a new lease, and the tenant just left. And the judge said, or the court in that matter said, you know, you can't take on all the terms of this contract and then walk away from it. And this is the same situation here where Employee Max and Venture stepped into the shoes of ESO. They paid Brian based upon the terms of the offer letter. He had all the same day-to-day appointments. I'm reciting all the facts that you've already seen that we say everyone agrees to. But the point here is, are there facts on the other side? So the asset purchase agreement specifically excluded a number of contracts, and this was one of them. Employee Max never promised to honor the ESO contract. And if that's the case, and they basically kept him on because they thought he would be helpful, and we're talking about commissions here, doesn't that create a credibility issue as to what we do with the commissions? As to the amount of the commissions or as to whether the commissions are due in LA? Both. Well, as to whether commissions are due in LA, we look basically to the Bird Hill factors, right? And Judge Marston appropriately applied Bird Hill in finding that the successor, Employee Max and Venture, are liable to Brian because they continue to pay Brian under the terms of the prior offer letter. Your point is that, in effect, there was an implied assumption of the ESO contract that your husband had. That's correct. And their point is they didn't buy it and never promised to honor it, and you've got obviously evidence going the other way. That sounds like a jury issue. Your Honor, respectfully, there were no issues of fact that were raised by the appellants in their brief. The only issue that was raised was a legal issue. In Bird Hill, I'll quote the Bird Hill court here, but they say, Throughout its argument, appellant attempts to characterize the underlying legal issue concerning the applied assumption of liability as a material dispute of fact. Whether the appellant implicitly assumed the lease is a question of law, albeit one that is dependent on the facts. However, whereas here the relevant facts are undisputed, there are no credibility questions for a fact finder to resolve at trial. Appellant's position confuses the legal dispute with the contested facts of the case. In this case, though, we have two sets of – the facts are the same, but the inference to be drawn from them are different. In one instance, from your point of view, the fact that he worked and didn't get his commissions is a breach of contract. From your adversary's point of view, the fact that he wasn't paid commissions and it wasn't listed as an expressly assumed liability demonstrates the agreement wasn't assumed. And I think that might be what Judge Ambrose is driving at, is doesn't a jury have to decide what the reasonable inference is from those facts? How can a judge do that? Well, I hear where you're coming from, but this is strikingly similar to Bird Hill in that way. So the tenant in that case paid certain of the obligations, did certain of the things. In the asset purchase agreement in that case, they talked about how they were going – the parties were going – maybe not in the asset purchase agreement, but it was discussed that the parties were going to negotiate the terms of a new lease. They weren't assuming the old lease. And they did – very similar here. Brian did not – knew that they weren't assuming his contract, I guess, explicitly. However, when they started – when he started his employment there, he continued doing the exact same things he had always done. He was paid the exact same way. Besides the fact that, again, breach of contract, they just chose not to pay his commissions. This is a salesperson. Objectively speaking, typically at a company, a salesperson gets paid a salary plus commissions. And here, they are just choosing that. But wouldn't their – they're saying that, yes, we kept him on and, yes, we paid him, but we did not assume the contract. That's in black and white. It was in the agreement. So somehow, did we impliedly do something? And they're saying their conduct did not indicate an intention to assume all obligations under that prior contract. Or maybe any – maybe it was just a new arrangement. Don't they have a right to make that case to a jury? Well, they have the right to present all of those facts at summary judgment as well, as did we. And we presented the facts. But if it's a material issue of fact at summary judgment, then it has to go to a jury. Right. But as in Bird Hill, the court – the issue of whether the contract has been implied is a legal issue and not a factual issue to be determined by the court. I mean, the first Bird Hill factor is conduct. This is conduct post-acquisition. And it seems like there may be significant issues going both ways as it relates to the agreement to assume an obligation previously with another company to pay commissions. Well, there is – the asset purchase agreement says what it says. But the actions of Venture and Employment Act speak for themselves. They continue to pay Brian, and he continues to do the same – have the same responsibilities. They discuss renegotiating a contract. And you very well may win before a jury. You probably have a very good case, obviously, and the court thought so too. But it doesn't seem that a court necessarily can do that at summary judgment. I hear Your Honor's point. I just – relying on Bird Hill, it's a very similar case where the court – Bird Hill gives a rule. One rule is you look to the conduct post – in this case, post-acquisition. Was there an intention – that conduct showing an intention to assume the contract that previously was not assumed? Right. And that – the way that they – the way that the acquirers showed that conduct was to continue to pay Brian pursuant to the terms of the offer letter. They didn't have to pay him the exact same salary that he was getting. They literally paid him to the dime the exact same salary that he was getting paid. They continued to have him do the exact same responsibilities he had always done at ESO. And there's no dispute as to whether that's the case. Okay. Can we move to the questions? We have no other questions. Okay. If I could just address the – I'll let you go. Yes. So with respect to Venture's liability to Brian, this is different than your ordinary contract claim for piercing a corporate bail. We aren't talking about a third-party vendor who is suing for services that were performed for a subsidiary. This is an employee whose direct supervisor was Brad Isaacs, the chief revenue officer of Venture. There's no evidence on the record to suggest that Brad plays any role at EmployeeMax, aside from being maybe a superior to its employees. Brian was managed – Doesn't that hurt you? If that's the only job he played, doesn't that hurt you? It shows a stark line between the operation of EmployeeMax and an occasional decision by the parent company. Well, I guess what I was getting at there was the claim by Venture is that each of its board of directors is also a director of each of the companies. And so – Is that in the record? I don't know. I know Alex Campos made reference to something of that nature, that he was the CEO of each of the companies that they acquired. This is like 200-ish companies. And so these same people are running all of these different companies. But Brad Isaacs never mentions anywhere that he is EmployeeMax. But effectively, he is the hire-fire of all employees at EmployeeMax. I don't know if he plays that role for every other company that they also purchase. But that's 200 companies where these guys are playing all of these exact same roles. I'd also submit to the court that if you take a look at Marzano, this court has previously held that the presumption that the subsidiary is the employer could be overcome if the parent controls the employment practices and decisions of the subsidiary. And further, in Ratcliffe, the Eastern District found that where separate corporate entities are so interrelated and integrated in their activities, labor relations and management, that they may be treated as a single employer. So in that case, several of the most – That's a little bit different. To have somebody treated as a single or joint employer is different than piercing the corporate veil. And the issue that we're evaluating is whether the district court correctly concluded that there was insufficient proof to justify a piercing. So I think we need to be sure that we're being clear in whether somebody is a joint employer for employment purposes and employment causes of action as compared to piercing in this instance to hold them liable for the breach of contract. I would submit to the court that it's a similar issue between piercing and a singular employer for employment purposes. Here, Brian was managed by Venture. He was hired by Venture. He was fired by Venture. And as Your Honor pointed out, he was paid by Venture. Only that last check. That's the only check that's in the record. In the representations, I think he said he was always paid by EmployMax. So I don't think there's any – I think the record discloses the only check he got from Venture was the last one. I'm not sure if that's accurate or not, Your Honor. I'm not 100 percent sure. I will tell you that in the statement of material facts that we submitted with our initial motion for summary judgment, Paragraph 53, we say, During his tenure as president of EmployMax, Plaintiff had absolutely no authority with respect to the business. He couldn't sign a check or document. He never knew if a board of directors existed or if they ever had meetings. Venture employees, including without limitation, and then my list of employees, controlled every aspect of the business at EmployMax. And you cite that to his deposition for some of those points, correct? Right. That's really what we look at. We have to look at the record, not the statement of facts. Right. And we know all of that. The point is, does any of that demonstrate that there was no respect of corporate formality between Venture and EmployMax? And I'm not sure the record demonstrates even an issue of fact as to whether there was separateness. My point in mentioning that specific paragraph is that the defendants do not deny any of those allegations. And by way of denying, they effectively admitted that all of that is true. Interesting. And so, again, this isn't, as I mentioned, this isn't third-party vendor work. This is an employee. He was employed by EmployMax, and Venture took responsibility for his employment. They treated him like their own employee. Even the customers were confused about who was what. Under Marzano and Radcliffe, as I discussed, and I know there's some distinguishing there with regard to employment discrimination versus piercing the corporate veil, but it's a similar analysis. And in this case, we're looking at an employee. We're not looking, like I said, at a third-party vendor. Venture was ultimately Brian's employee. They hired Brian. They fired Brian. They paid Brian. And the only thing they don't want to do is pay him his commissions, and that's all we're asking the court for today. Okay. So if you have any other questions, I'd be happy to. No, I think we're good. Thank you. Thank you, Your Honor. Thank you for your argument. Judge Ambrose, you hit exactly why a notice of appeal was filed as to the offer letter, which is the appellants believe it's an issue of fact as to the conduct of the parties that wasn't suitable for determination or disposal on summary judgment. And secondarily, as it applies to – Do you know the payments made, the usual type of payments made to Mr. Hosel, were they made by Venture or were they made by Employee Max? Employee Max. When was the last check cut by Venture? I do not know, Your Honor. And then as it applies to the piercing of the corporate veil, even as Judge Marston pointed out in her order on summary judgment, when she was going through the factors necessary to pierce the veil under Pennsylvania law, I'll quote it, moreover, Hosel does not even argue that any of the factors are present. He does not contend that Employee Max was undercapitalized, that Employee Max and Venture failed to adhere to corporate formalities, and that there was overlap between Venture and Employee Max's directors and officers. And then there's a footnote, and the footnote states, even if Hosel had identified such an overlap of the directors and officers, where a parent company owns all of the subsidiary stock, it is expected that there will be directors which are common to both boards, and it is quite possible that those who occupy such positions might exercise some degree of control over the subsidiary. And that's citing in schedule asbestos litigation, 1993 W.L. 209719, page 6, and also Henry Enterprise Rent-A-Car Wage and Hour Employment Practices litigation, which is 735F Supplemental 2D 277, which the parenthetical states in her order, the sharing by the corporations of directors of the ownership by a defendant parent of 100% of Enterprise Rent-A-Car Pittsburgh stock did not implicate that the defendant parent controlled the subsidiary to the extent necessary to find it in an alter ego of the defendant. So with that, I would ask that this case be remanded with direction to the trial court that the Birdhill factors were not dispositive, that there's genuine issues of material fact as it applies to the conduct of the parties, and I would ask that the court deny the cross-appeal seeking to pierce the corporate veil. Thank you both for your arguments. Thank you very much. The court will take the matter under review.